**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0856-22

VAUGHN SIMMONS,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted September 25, 2024 – Decided October 3, 2024

Before Judges DeAlmeida and Puglisi.

On appeal from the New Jersey Department of Corrections.

Vaughn Simmons, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Dorothy Rodriguez, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Vaughn Simmons appeals from the October 16, 2023 final agency decision of the Department of Corrections (DOC) upholding the confiscation of videos he purchased through a DOC-approved inmate kiosk system for delivery by email. We affirm.

I.

Simmons is an inmate at Northern State Prison. In March and April 2022, he ordered forty-three thirty-second videos through the JPay inmate kiosk system for delivery to him by email. According to Simmons, the videos depict non-nude cultural dancing.

On July 15, 2022, Simmons submitted an inquiry to DOC staff stating that he had not received the videos. Although he did not receive a confiscation notice from DOC, JPay informed Simmons that the agency had confiscated the videos. Simmons requested an explanation for the confiscation and asked whether he would be compensated for the videos or have them returned to him upon his release from incarceration.

On July 22, 2022, a DOC Lieutenant informed Simmons in writing that the videos were confiscated because they "violated the [DOC] policy . . . of obscenity as well as the Terms and Conditions of Use by JPay." The decision provided definitions of "obscene," "pornography," and "sexually explicit"

materials, but did not provide an explanation of where those definitions were obtained. The letter also informed Simmons that JPay's Terms and Conditions of Use, which he agreed to follow, states that all emails and attachments will be monitored by DOC or JPay for compliance with DOC policies, and that inmates will not receive a refund for materials confiscated by DOC.

On August 2, 2022, Simmons submitted an inmate grievance form seeking compensation for the confiscated videos. He stated that: (1) DOC failed to provide him with a confiscation notice; (2) the confiscation was "ethnic discrimination, cultural bias[,] and prejudice" and (3) he was being retaliated against because "non-nude videos" he previously purchased and received from JPay had been removed from his JPay account.

On September 13, 2022, a DOC representative informed Simmons that his grievance had been previously answered.

On October 4, 2022, Simmons filed a request for assistance with the DOC Ombudsman stating that DOC did not fully address his allegations of discrimination and retaliation. He alleged the confiscation was discrimination against "African, African-American communities, Latino communities[,] and French Polynesian communities" because the dancing depicted on the videos is cultural.

3

On October 11, 2022, a DOC employee responded by informing Simmons that his grievance had previously been answered.

Simmons again filed a claim with DOC that his grievance had not been adequately examined. On October 19, 2022, a DOC employee issued a final agency decision reiterating the basis for the confiscation stated in the July 22, 2022 letter.

This appeal followed. On October 5, 2023, we granted DOC's motion for a remand. On October 16, 2023, the agency issued a revised final agency decision, clarifying the basis for the confiscation. The agency stated that the videos were confiscated because they were "prurient," "obscene," "pornography," and "sexually explicit," within the meaning of N.J.A.C. 10A:18-2.14(a)(6), and because they violate DOC's policy on videos and attachments received through JPay. The decision elaborated that the videos each were comprised of thirty-seconds "consisting entirely of close-up shots of various women's buttocks," while the women were "gyrating their hips in a manner that causes their buttocks to slap together during the entire video."

Simmons argues that the decision should be reversed because DOC: (1) did not provide him with a confiscation notice when it first confiscated the videos, depriving him of due process; (2) failed to compensate him for the

videos; (3) violated his First Amendment rights; and (4) retaliated against him by confiscating videos it previously permitted him to possess.

## II.

Review of an administrative agency's final decision is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). "We will not reverse an agency's judgment unless we find the decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Id. at 202 (quoting Stallworth, 208 N.J. at 194). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008)). The Legislature has provided for the broad exercise of DOC's discretion in all matters regarding the administration of a prison facility. Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 583 (App. Div. 1999).

We have carefully reviewed the record in light of these precedents and find no basis on which to reverse the DOC's decision.

A-0856-22

With respect to the agency's failure to provide notice of its initial confiscation of the videos, we note that incarcerated persons have a right to due process. Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974). That right, however, is subject to limitations consistent with the important State interest in maintaining the orderly operation and security of prisons. O'Lone v. Shabazz, 482 U.S. 342, 348 (1987). "Due process is not a fixed concept . . . but a flexible one that depends on the particular circumstances." Doe v. Poritz, 142 N.J. 1, 106 (1995) (citations omitted). Generally, "due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Ibid.

DOC does not dispute that it failed to provide Simmons with a notice of the confiscation, as required by N.J.A.C. 10A:3-6.1(a). Nevertheless, it is clear from the record that Simmons ultimately became aware of the confiscation and had multiple opportunities to challenge the agency's decision to block his receipt of the videos. The agency responded to Simmons's grievances with an explanation of the basis of its decision to confiscate the videos. We see no deprivation of due process.

Nor do we find merit in Simmons's argument that he is entitled to compensation for the confiscated videos. The JPay Terms of Service, with which Simmons agreed to comply as a condition of using the system, expressly

A-0856-22

provides that a refund will not be given when an inmate orders a video that violates DOC policy or regulations and is, as a result, confiscated.

Simmons's claims of discrimination and retaliation are not supported by the record. A DOC regulation prohibits the possession of material that "[t]aken as a whole, appeals to a prurient interest in sex," "[l]acks, as a whole, serious literary, artistic, political, or scientific value," or "[d]epicts, in a patently offensive way, sexual conduct . . . extreme close-up photos, [and] any . . . manipulation . . . of the . . . buttocks . . . ." N.J.A.C. 10A:18-2.14(a)(6)(i) – (iii). The regulation provides that "[v]iolation of any rules regarding . . . electronic correspondence may result in non-delivery of the . . . electronic correspondence and/or attachment . . . and/or e-videos." N.J.A.C. 10A:18-2.14(a)(8).

The videos, as described by DOC, depict manipulation of the buttocks in a manner appealing to the prurient interest. Simmons produced no evidence that the videos, taken as a whole, have serious literary, artistic, political, or scientific value. Nor has he established that the DOC has applied its regulation, which is clearly designed to maintain the orderly operation and security of the prison, in a discriminatory fashion based on his cultural background. See Miller v. California, 413 U.S. 15, 23 (1973) (holding that inmates do not have a

constitutional right to possess obscene material that lacks "serious literary, artistic, political, or scientific value.").[1]

Simmons also failed to establish that the agency retaliated against him by confiscating previously approved videos. Once the agency became aware of the nature of the videos Simmons was ordering from JPay, it had the authority to review his prior video purchases stored in his JPay account to determine whether he was in possession of additional contraband.

To the extent we have not specifically addressed any of Simmons's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] The parties did not include a copy of the videos in their submissions to this court. We, therefore, have not viewed the videos and rely on the description of their contents provided by DOC, which Simmons does not dispute.

A-0856-22